JOHN D. CLEMENTS, APPELLANT, *v.* JONATHAN R. WARNER.

In 1850, Congress granted to the State of Illinois every alternate section of land for six sections in width on each side of a proposed railroad, and until the State could make its selection, the land on either side of the track of the road was withdrawn from entry or sale.

In 1852, the selections were made, and the land not selected was offered for sale, and such as were not sold became subject to private entry.

In October, 1855, Clements began a settlement upon a portion of one of these sections.

In November, 1855, Warner purchased the same land at private sale at the land office.

In November, 1856, Clements claimed a pre-emption right, and the register and receiver granted a certificate of purchase accordingly.

*Clements v. Warner.*

This court holds that the land in question was subject to a pre-emption right in November, 1855, when Warner made his purchase. Consequently it is invalid, as against the pre-emption right of Clements.

THIS was an appeal from the Circuit Court of the United States for the southern district of Illinois.

The case is stated in the opinion of the court.

It was submitted on printed arguments by *Mr. Ives* for the appellant, and *Mr. R. E. Williams* for the appellee.

Mr. Justice CAMPBELL delivered the opinion of the court.

The appellee filed this bill in chancery in the Circuit Court to quiet his title to a portion of section thirty-three, in township seventeen north, of range eight east, of the third principal meridian, in the county of Champaigne, Illinois. By the act of Congress of the 20th September, 1850, for granting the right of way and making a grant of land to the States of Illinois, Mississippi, and Alabama, in aid of the construction of a railroad from Chicago to Mobile, (9 Statutes at Large, 466,) there was granted to the State of Illinois, for the purpose of making the railroad described in the title of the act, every alternate section of land designated by even numbers, for six sections in width on each side of the road; and in case any of these sections had been sold, or were subject to a pre-emption claim, then the State was authorized to select from the lands of the United States, contiguous to the tier of sections before mentioned, so much land in sections and parts of sections as should make up the full complement of land included in the concessions in the act. The act further provided, that the sections and parts of sections of lands which, by the grant, might remain to the United States within six miles on each side of the road, should not be sold for less than double the minimum price of the public lands, when sold. To comply with the requirements of this act, the Commissioner of the General Land Office withdrew from entry or sale the land on either side of the track of the road, until the State of Illinois could make the selections that were authorized by it. These

were completed in 1852, and during that year the President of the United States by a proclamation directed the sale of those sections and parts of sections along the line of the road that had remained to the United States, after the satisfaction of the grant to Illinois. Such of the sections as were not sold became subject to private entry. The section of land described in the plaintiff's bill, a portion of which forms the subject of this suit, was one of these, and was purchased at private sale at the land office, in November, 1855, by a person under whom the plaintiff derives his claim, and who has the usual receipt given by the receiver of the land office.

The conflicting claim against which the appellee seeks relief originates in an entry by the appellant in November, 1856, as having a pre-emption right under a settlement began in October, 1855, before the date of the entry on which the title of the appellee is founded. A patent issued to the appellant as having the superior claim. The object of the bill is to reverse the decision of the officers of the land office, and to obtain a relinquishment of the legal title evinced by this patent, and the only question presented is, whether the land was the subject of a pre-emption right in 'November, 1855.

The 10th section of the act of the 4th September, 1841, confers upon the beneficiaries of that act, "who shall make a settlement in person on the public lands to which the Indian title has been extinguished, and which shall have been surveyed prior thereto, and who shall improve and inhabit the same, as specified in the act, a right of pre-emption to one quarter section of land." Among the exceptions in the act to the exercise of this right of pre-emption, is one that includes "sections of lands reserved to the United States, alternate to other sections granted to any of the States for the construction of any canal, railroad, or other public improvement." 5 Statutes at Large, 466.

Subsequent acts of Congress extend the pre-emption privilege to lands not surveyed at the time of the settlement, and confer privileges upon settlers on school lands, and on lands reserved for private claims. 5 Statutes at Large, 620, sec tions 3, 9.

In 1853, the pre-emption laws, as they now exist, were extended to the reserved sections of public lands along the lines of all the railroads, wherever public lands have been granted by acts of Congress, in cases where the settlement and improvements had been made prior to the final allotment of the alternate sections to such railroads by the General Land Office.  10 Statutes at Large, 244.

In the administration of these laws, the Executive Department of the Government has decided, that after the restoration to market of the lands embraced in the exception we have quoted from the act of 1841, and when they have become subject to entry at private sale, they lose their character as reserved lands, and will then be subject to the privileges of pre-emption in favor of settlers.  The policy of the Federal Government in favor of settlers upon public lands has been liberal.  It recognises their superior equity to become the purchasers of a limited extent of land, comprehending their improvements, over that of any other person.

By the act of 1841, the pre-emption privilege in favor of actual settlers was extended over all the public lands of the United States that were fitted for agricultural purposes and prepared for market.  Later statutes enlarged the privilege, so as to embrace lands not subject to sale or entry, and clearly evince that the actual settler is the most favored of the entire class of purchasers.  No act of Congress has defined the meaning of the term reserve, as applied to lands in these various acts, nor determined explicitly when these alternate sections lose their character as reserves.  But all other public lands fitted for agricultural purposes, after they have been offered at public sale, are affected by the privilege of the actual settler to have the preference of entry.  No reason of public policy exists to exclude this class of public lands from the operation of the same law, under the same conditions.  No violence is done to the language of the act by limiting the exception to the temporary withdrawal of the lands from the market, and the liberal policy of Congress in favor of the actual settler is better accomplished by a restrictive rather than extensive in-

terpretation of the exceptional clause in the act. We there-fore sanction the construction adopted in the land office.

The Circuit Court overruled the demurrer of the defendant to the bill, and made a decree in conformity to the prayer of the bill. This is error. The decree of the Circuit Court is reversed, and the cause is remanded to the Circuit Court, with directions to dismiss the bill, with costs.