## UNITED STATES v. GARRETSON.

*(Circuit Court, S. D. Alabama.   March 20, 1890.)*

1. PUBLIC LANDS—RESERVATIONS—LAND SUBJECT TO ENTRY.
     The general public domain is open to private entry, and lands cannot be said to be reserved for such entry.   The lands reserved are those severed from the mass of public lands, and appropriated for governmental purposes.

2. SAME—OFFENSES AGAINST LAND LAWS—CUTTING TIMBER—INDICTMENT.
     The last clause of section 2461, Rev. St., forbids the cutting or removal of timber from lands open to private entry with the intent to use it for any other than United States naval purposes; but such intent must be alleged in the information or indictment.

3. SAME—CONSTRUCTION OF STATUTES—GENERAL AND PARTICULAR WORDS.
     It is a general rule in the construction of statutes that general words preceded or followed by particular words in the same or another clause are qualified or restrained by them.

4. SAME—CUTTING TIMBER—TURPENTINE BOXING.
     Rev. St. § 5388, makes the wanton destruction of timber on lands reserved for public uses a crime, but does not cover turpentine boxing or wanton destruction of timber on lands open for pre-emption, homestead, and cash entries.

5. STATUTES—CONSTRUCTION—PENAL STATUTES.
     Penal statutes cannot be extended beyond the obvious meaning of their terms on any plea of failure of justice; and, if there is a fair doubt whether the act charged is embraced in a criminal prohibition, that doubt is to be resolved in favor of the accused.

At Law.   On demurrer to criminal information.   The opinion covers points made on original hearing and rehearing.

*L. H. Faith*, for demurrant.

*M. D. Wickersham*, Dist. Atty., for the United States.

TOULMIN, J.   The first, second, and third counts in the information charge the defendant with unlawfully cutting, and procuring to be cut, timber on lands of the United States, which, in pursuance of law, have been reserved for pre-emption, homestead, and cash entries; and the fourth and fifth counts charge him with wantonly destroying, and procuring to be wantonly destroyed, timber on the same lands of the United States, with the same averment that they were lands which, in pursuance of law, had been reserved for pre-emption, homestead, and cash entries, and that the cutting and wanton destruction of the timber was by boxing and chipping the same for turpentine purposes.   The demurrers are, in substance, that the information fails to aver that the timber alleged to have been unlawfully cut and to have been wantonly destroyed was on lands of the United States which, in pursuance of law, had been reserved or purchased for the use of the navy of the United States, or for military or other public purposes, and that it fails to aver the intent with which the alleged cutting was done.   It is conceded by the district attorney that the information is not good under section 2461, Rev. St., under the latter clause of which it is necessary to aver the intent with which the cutting was done.   But the contention is that the information is good under section 5388, Rev. St., which provides, as

---

¹Reported by P. J. Hamilton, Esq., of the Mobile, Ala., bar.

amended by act of June 4, 1888, that "every person who unlawfully cuts * * * or wantonly destroys * * * any timber standing upon the land of the United States which, in pursuance of law, may be reserved or purchased for military or other purposes, or upon any Indian reservation, * * * shall pay a fine of" etc. "May be reserved" here means "have been or shall be reserved," which are the words used in the original act. See 11 St. at Large, 408.

Now, can the information be maintained under this section, 5388, Rev. St.? This inquiry suggests two questions: *First.* What lands of the United States was this section designed to protect? All the lands, or certain lands, of the United States? *Secondly.* If certain lands, viz., lands reserved for particular purposes, do they include lands that are subject to pre-emption, homestead, and cash entries? It is a general rule, in the construction of statutes, that general words preceded or followed by particular words in the same or a subsequent clause, are qualified and restrained by the particular words. Or, to state it somewhat differently, "when general words follow, in a statute, words of particular and special meaning, if there be not a clear manifestation of a different legislative intent, they are construed as applicable to persons or things, or cases of like kind, as are designated by the particular words." Bish. St. Crimes, §§ 245, 246; Dwar. St. 69, 79; *Chapman* v. *Forsyth,* 2 How. 202; *Woolsey* v. *Cade,* 54 Ala. 385; *Amos* v. *State,* 73 Ala. 501. The more general words "or other purposes," following the more specific or particular words "for military," upon a settled rule of construction, larger legislative intention not being clearly expressed, must be construed as extending only to purposes *ejusdem generis* with military purposes; that is, governmental or public purposes. A military purpose is a public purpose. Public land directed by the president to be reserved for use as a military post is not liable to entry under a pre-emption claim because appropriated for a public purpose. *Wilcox* v. *Jackson,* 13 Pet. 496; *Leavenworth Railroad Co.* v. *U. S.,* 92 U. S. 742. "Land lawfully appropriated to any purpose becomes thereafter severed from the mass of public lands." *Kansas Pac. Ry. Co.* v. *Atchison R. Co.,* 112 U. S. 414, 5 Sup. Ct. Rep. 208; *Railroad Co.* v. *Whitney,* 132 U. S. 357, 10 Sup. Ct. Rep. 112; *U. S.* v. *Payne,* 2 McCrary, 289–306, 8 Fed. Rep. 883. That is to say, land consigned to or set apart for any particular purpose, whether by reservation or purchase, becomes thereafter severed from the mass of public lands. Lands are appropriated by reservation for the establishment of trading houses, for fortifications or military posts, for light-houses, for cemeteries, for the use of schools, and the like; and, when thus appropriated, they become thereafter severed from the mass of public lands. See authorities, *supra.* "Legislation which reserved it [land] for any purpose excluded it from disposal as the public lands are usually disposed of." *Leavenworth Railroad Co.* v. *U. S.,* 92 U. S. 742, 748. And the court say that "every tract of land set apart for special uses is reserved to the government. * * * There is no difference * * * whether it be appropriated for Indian or for other purposes."

Now, if congress had intended by this section (5388) to protect the timber on all lands of the United States, and to provide for the punishment of depredators thereon, then why enumerate specially lands reserved for military purposes, Indian reservations, etc.? I think it is clear that congress intended by this provision of law to protect the timber on certain lands of the United States,—lands reserved for special purposes. This, however, is virtually conceded by the prosecution; for it is averred in the information that the lands on which the alleged depredation is said to have been committed were lands reserved for preemption, homestead, and cash entries. Now, do the reserved lands referred to in section 5388 include lands subject to pre-emption, homestead, and cash entries? Are there any lands of the United States reserved for any such purposes? Sections 2257 and 2258 of the Revised Statutes provide that all lands belonging to the United States are subject to the right of pre-emption, except "lands included in any reservation, by any treaty, law, or proclamation of the president, for any purpose;" and section 2289, Rev. St., provides that lands subject to homestead entries are such "unappropriated public lands" as may be subject to pre-emption. In the case of *Wilcox* v. *Jackson*, 13 Pet. 498, the court say that "lands which may have been appropriated for any purpose whatsoever are exempt from liability to the right of pre-emption," and that "all lands are exempt from pre-emption which are reserved from sale, pursuant to law, for any purpose." When lands reserved to the United States for any public purpose are again put in the market so as to become subject to entry at private sale, they lose their character as reserved lands, and become subject to pre-emption. *Clements* v. *Warner*, 24 How. 394. In the case of *Clements* v. *Warner, supra*, the court say that, whenever lands "become subject to entry at private sale, they lose their character as reserved lands, and will then be subject to the privileges of pre-emption in favor of settlers." In *Newhall* v. *Sanger*, 92 U. S. 761, the court say that "the words 'public lands' are habitually used in our legislation to describe such as are subject to sale or other disposal under general laws. * * * To them alone could the order withdrawing lands from pre-emption, private entry, and sale apply." The court in this case, as in all the other cases cited on the subject, clearly draw a distinction between lands reserved and lands to which a pre-emption or homestead claim may attach. See, also, *Aurrecoechea* v. *Bangs*, 114 U. S. 381, 5 Sup. Ct. Rep. 892. There is no doubt that the government can dispose of the public land by grant for public purposes, or reserve it from sale for such purposes; and, from the time this is done, such land is not subject to pre-emption entry. *U. S.* v. *Yoder*, 18 Fed. Rep. 372; *U. S.* v. *Brandestein*, 32 Fed. Rep. 738; *Atherton* v. *Fowler*, 96 U. S. 513; *Railroad Co.* v. *Whitney, supra*. It is severed from the mass of public lands to which alone a pre-emption or homestead claim could attach, or on which such entry could be made. From the authorities referred to, and under sections 2257–2289, Rev. St., it seems very clear to me that lands subject to homestead, pre-emption, and cash entries cannot be said to be lands reserved for any purpose. Such lands comprise the general

public domain,—unappropriated lands,—lands not held back or reserved for any special governmental or public purpose. *U. S.* v. *Payne, supra; Turner* v. *Union,* 5 McLean, 344.

But the district attorney contends that section 5388 should be liberally construed, that is to say, so construed as to cover the unlawful cutting and wanton destruction of timber in any manner on all the lands of the United States; otherwise, this public mischief could not be prevented. The rule is that the evident intention of the legislature ought not to be defeated by a forced and overstrict construction, but it has been long and well settled that penal statutes must be construed strictly; that the courts will not extend them beyond the obvious meaning of their words. *U. S.* v. *Morris,* 14 Pet. 464. Penal statutes cannot be extended beyond the obvious meaning of their terms on any plea of failure of justice. Sedg. St. & Const. Law, 279; *Remmington* v. *State,* 1 Or. 281; *U. S.* v. *Reese,* 5 Dill. 405, 414. If there is a fair doubt whether the act charged in the indictment is embraced in a criminal prohibition, that doubt is to be resolved in favor of the accused. *U. S.* v. *Reese, supra; U. S.* v. *Whittier,* 5 Dill. 35; *U. S.* v. *Clayton,* 2 Dill. 219; *U. S.* v. *Sheldon,* 2 Wheat. 119; *U. S.* v. *Wiltberger,* 5 Wheat. 76. And I think we have seen that the obvious meaning of the words "reserved for other purposes" in the statute, construed in connection with the context, is reserved for other special public purposes. That this was the intention of congress, I have no doubt; and it is still clearer, I think, that land subject to pre-emption, homestead, and cash entries are the "public lands" of the United States,—those not reserved for any purpose. But section 2461, Rev. St., was designed for the protection and preservation of these lands as a part of the public domain, and prescribes penalties for the cutting or removal of timber on or from the same. As was said by the court in the case of *U. S.* v. *Schuler,* 6 McLean, 28:

"Section 2461 constitutes part of the land law of the United States, and was designed for the protection and the preservation of * * * the national domain. * * * The term 'other land' in the statute has reference to its surveyed divisions, and contemplates the lands known and described in the public surveys as distinct from those reserved for naval purposes."

And in *Leatherbury* v. *U. S.,* 32 Fed. Rep. 780, Judge PARDEE says:

"The object of the section [2461 Rev. St.,] was and is to preserve the timber on all the public lands, where the lands have not been reserved," etc.

And he says that "trespasses other than the cutting or removing of the trees or timber, with the intent to export, dispose of, etc., were not contemplated nor provided for." Hence the contention that, unless it is held that the cutting of timber by boxing it for turpentine purposes, and the wanton destruction of timber, on all public lands, can be prosecuted under section 5388, Rev. St., such public mischiefs cannot be suppressed, and there would be a failure of justice. The answer is, it is the business of the courts to expound, not to make, the law; and, if congress has not thought proper to make the cutting of timber by boxing it for turpentine purposes, and the wanton destruction of timber on all lands of

the United States, indictable, I have no discretion, but am bound to declare the law as I understand it, let the consequences be what they may. In my opinion, the demurrers to the information are well taken, and they are sustained.