# ARD *v.* BRANDON.

## ARD *v.* PRATT.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

Nos. 141, 142. Argued January 10, 1895. — Decided March 4, 1895.

A., being qualified to make a homestead entry, entered in good faith upon public land within the indemnity limits of a railroad grant, but not within the place limits. He demanded at the local land office the right to enter 160 acres as a homestead. This was refused on the ground that the tract was within the limits of the grant, although at that time the land had not been withdrawn from entry and settlement. This was subsequently done, and the land conveyed to the railway company. A. remained upon the land, cultivating it. In an action to recover possession from him, brought here from a state court by writ of error, *Held*, that the application was wrongfully rejected, and that his rights under it were not affected by the fact that he took no appeal.

These two cases may be considered together, for the initial fact in defendant now plaintiff-in-error's claim of right is the same in each case. The actions were commenced by the respective defendants in error as plaintiffs in the District Court of Allen County, Kansas, the first, to recover the possession of the north half of the northeast quarter of section 11, township 26, range 20, and the other to recover possession of the west half of the southeast quarter of section 2, township 26, range 20. These two tracts, each of 80 acres, adjoin, and are so situated as to be the subject of one homestead entry. Rev. Stat. §§ 2289 and 2298.

The first of these tracts was on April 10, 1873, certified by the United States to the State of Kansas, and by it on May 19, 1873, conveyed to the Missouri, Kansas and Texas Railway Company. The second was patented November 3, 1873, by the United States directly to the Missouri, Kansas and Texas Railway Company. The respective plaintiffs hold under conveyances from the railway company.

A jury having been waived, the cases were submitted to

the court upon certain admissions, and the single testimony of the defendant. No special findings of facts appear in the record, but by both the trial and the Supreme Court of the State the facts testified to as well as those admitted were treated as facts in the case. Among the matters admitted were these: " At the time defendant made settlement he was competent to make a legal homestead or preëmption entry, and has ever since been duly competent and qualified to make a valid homestead entry, and that he still resides on said land, with a wife and six children, and that he has all the required improvements to perfect a homestead or preëmption. It is admitted that the W. ½ of S. E. ¼, sec. 2, 26, 20 E., was selected by the Missouri, Kansas and Texas Railway Company, April 14, 1873, and it was patented to said company the 3d day of November, 1873, under the act of Congress of July 26, 1866. The N. ½ of the N. E. ¼ of sec. 11, 26, 20 E., was selected by both companies jointly — Missouri, Kansas and Texas Railway Company and L., L. & G. R. R., August the 8th, 1872. This tract was approved to the State for the M., K. & T. Co., April 10, 1873, under the act of Congress of March 3, 1863. Both tracts were selected as indemnity lands, and both tracts are over 12 miles from both roads and lie within the indemnity limits of both the L., L. & G. and M., K. & T. R. R. Said defendant also testified that when said defendant settled on said land he did it in good faith and for the sole purpose of making it his homestead."

So much of defendant's testimony as bears upon his original occupation of the 160 acres, and his first transaction at the government land office, is as follows:

" The first work said defendant did on said land was about the last of June, 1866; that he broke about two acres of prairie and three hedge rows on said land, making about five acres in all. Then I went to the U. S. land office at Humboldt, Kansas, which was on the 14th day of July, 1866, and there I made out a homestead application for said land, as described, and tendered the application and the land office fees to the register of the U. S. land office, of which Watson Stewart was register of said land office, and at that time I was a single

man and over 21 years of age, a citizen of the United States, and had never had the benefit of the homestead or preëmption laws of the United States, but said register, Watson Stewart, rejected said application and fees, as he claimed, on the ground that said land was situate within the granted limits of the L., L. & G. R. R. and was double minimum lands, and that he could *not* let me homestead only 80 acres, as the land was double in price. Said register advised me if I wanted said 160 acres that I could first make a preëmption filing on 80 acres of land and put a house on said land within 12 months and prove up and pay for it at $2.50 per acre, and then I could homestead 80 acres more, and by that plan I could get 160 acres; but said register told me that I could change a preëmption filing at any time if I wanted to into a homestead, so I told said register as he would not allow my homestead I would make a preëmption filing on part of the land, as he would not let me only on 80 acres, so he made out the filing and I paid him a fee of $2.00, which he said was the fee.

" A copy is hereto attached and admitted as in evidence:

"'REGISTER'S OFFICE,
"'No. 2115.        HUMBOLDT, KANSAS, *July* 14*th*, 1866.
"'I certify that Newton L. Ard has this day filed in this office his notice to claim by right of preëmption the west half of the southeast quarter of section No. 2, in township No. 26 S., in range No. 20 east, of the sixth principal meridian, in the State of Kansas.   $2.50 per acre, within R. R. limits.
"'WATSON STEWART,
"' *Register.*'

" Said words and figures ' $2.50 per acre, within R. R. limits,' being written in red ink transversely across the face of the certificate."

It also appears from his testimony that subsequently and in the fall of 1866 and the spring of 1867 he did further work on the land, and built a house thereon ; that about July 1, 1867, he again went to the land office, but was told by Colonel N. S.

Goss, then the register, that he could neither change his pre-emption into a homestead entry nor prove up under the pre-emption law. In 1872 he made formal application to prove up on the land, but his application was denied by the local land officers. From this denial he prosecuted an appeal to the Commissioner of the General Land Office, and thence to the Secretary of the Interior, by both of whom the decision of the local land officers was affirmed.

The judgments of the District Court were in favor of the plaintiffs, which judgments were afterwards affirmed by the Supreme Court of the State on the ground that the legal title passed by the instruments offered in evidence through the railway company to the plaintiffs, and that the decision of the Land Department upon the facts of defendant's occupation and improvements was conclusive as against his equitable rights. To reverse these judgments the defendant sued out writs of error from this court.

*Mr. William Lawrence* for plaintiff in error.

*Mr. A. B. Browne,* (with whom were *Mr. A. T. Britton* and *Mr. George R. Peck* on the brief,) for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

As these lands were not within the place limits of either the Leavenworth, Lawrence and Galveston Railroad or the Missouri, Kansas and Texas Railway, and as they were within the indemnity limits of both roads, it is not open to question that the certification by the Land Department to the State of Kansas and the conveyance by it to the railway company of the one tract, and the patent directly from the United States of the other, operated to transfer the legal title to these two tracts to the railway company; and also that the United States has no cause of action against the railway company or its grantees to disturb the legal title thus conveyed. *Kansas City, Lawrence &c. Railroad* v. *Attorney General,* 118 U. S. 682;

*United States* v. *Missouri, Kansas & Texas Railway,* 141 U. S. 358. But it is equally clear under the authority of the last cited case, as well as of many others, thàt no adjudication against the government in a suit by it to set aside a patent estops an individual not a party thereto from thereafter setting up his equitable rights in the land for which the patent was issued. Referring to allegations in the bill of the United States in that case of matters very like those presented here, Mr. Justice Harlaṇ, speaking for the court, said (page 379) : " If the facts are as thus alleged, it is clear that the Missouri Kansas Company holds patents to land both within the place and indemnity limits of the Leavenworth road which equitably belong to *bona fide* settlers who acquired rights under the homestead and preemption laws, which were not lost by reason of the Land Department having, by mistake or an erroneous interpretation of the statutes in question, caused patents to be issued to the company."

The question, therefore, is whether the cases disclose equitable rights in the defendant superior to the claims of the railway company. If his rights are only those which spring from his preëmption entry and subsequent occupation of the lands, it may well be, as held by the Supreme Court of the State, that the decisions of the Land Department upon the questions of fact are conclusive against him. But we are of the opinion that the testimony shows a right anterior to his preëmption entry — a right of which he was deprived by the wrongful acts of the local land officer, and which he did not forfeit or lose by virtue of his subsequent efforts to preëmpt the land. According to this testimony he had commenced improving the premises prior to July 14, 1866. He was qualified under the laws of the United States to make a homestead entry. The land was not within the place limits of either road, and had not been withdrawn by the Land Department from entry and settlement, for the orders of withdrawal were not made until March 19 and April 30, 1867. He had therefore, on July 14, when he went to the land office, the right to enter the entire 160 acres as a homestead. This right he demanded. He made out a homestead application for the land as described,

tendered the application and the land office fees to the register of the land office, but the register rejected the application, giving as a reason therefor that the land was within the granted limits of the Leavenworth, Lawrence and Galveston Railroad, and was double. minimum lands, and that 80 acres was the limit of a homestead entry of such lands. As to this matter of fact the register was mistaken, and his rejection of the application was wrongful, and denied to defendant that homestead entry which under the law he was then entitled to. In the case of *Shepley* v. *Cowan*, 91 U. S. 330, 338, this court said, after referring to the cases of *Frisbie* v. *Whitney*, 9 Wall. 187, and the *Yosemite Valley Case*, 15 Wall. 77 :

" But whilst, according to these decisions, no vested right *as against the United States* is acquired until all the prerequisites for the acquisition of the title have been complied with, parties may, as against each other, acquire a right to be preferred in the purchase or other acquisition of the land, when the United States have determined to sell or donate the property. In all such cases, the first in time in the commencement of proceedings for the acquisition of the title, when the same are regularly followed up, is deemed to be the first in right. So in this case, Chartrand, the ancestor, by his previous settlement in 1835 upon the premises in controversy, and residence with his family, and application to prove his settlement and enter the land, obtained a better right to the premises, under the law then existing, than that acquired by McPherson by his subsequent state selection in 1849. His right thus initiated could not be prejudiced by the refusal of the local officers to receive his proofs upon the declaration that the land was then reserved, if, in point of fact, the reservation had then ceased. The reservation was asserted, as already mentioned, on the ground that the land was then claimed as a part of the commons of Carondelet. So soon as the claim was held to be invalid to this extent by the decision of this court in March, 1862, the heirs of Chartrand presented anew their claim to preëmption, founded upon a settlement of their ancestor."

Within the authority of that case we think the defendant

has shown an equity prior to all claims of the railway company. He had a right to enter the land as a homestead; he pursued the course of procedure prescribed by the statute; he made out a formal application for the entry, and tendered the requisite fees, and the application and the fees were rejected by the officer charged with the duty of receiving them — and wrongfully rejected by him. Such wrongful rejection did not operate to deprive defendant of his equitable rights, nor did he forfeit or lose those rights because, after this wrongful rejection, he followed the advice of the register and sought in another way to acquire title to the lands. The law deals tenderly with one who, in good faith, goes upon the public lands, with a view of making a home thereon. If he does all that the statute prescribes as the condition of acquiring rights, the law protects him in those rights, and does not make their continued existence depend alone upon the question whether or no he takes an appeal from an adverse decision of the officers charged with the duty of acting upon his application.

" The policy of the Federal government in favor of settlers upon public lands has been liberal. It recognizes their superior equity to become the purchasers of a limited extent of land, comprehending their improvements, over that of any other person." *Clements* v. *Warner*, 24 How. 394, 397.

There can be no question as to the good faith of the defendant. He went upon the land with the view of making it his home. He has occupied it ever since. He did all that was in his power in the first instance to secure the land as his homestead. That he failed was not his fault; it came through the wrongful action of one of the officers of the government. We do not mean to hold that the government or its grantees are concluded by the mere fact that one of its officers has given erroneous advice. If there was nothing more in this case than that the defendant consulted the officers of the land office as to how he could best obtain title to the land, that they gave him advice which was founded upon a mistake of fact and was not good advice, that he pursued the plan they suggested, and yet failed to acquire the title, he would have

to bear the consequences of the error.   But here a rightful application was wrongfully rejected.   This was not a matter of advice but of decision.   Doubtless the error could have been corrected by an appeal, and perhaps that would have been the better way ; but when, instead of pursuing that remedy, he is persuaded by the local land officer that he can accomplish that which he desires in another way — a way that to him seems simpler and easier — it would be putting too much of rigor and technicality into a remedial and beneficial statute like the homestead law to hold that the equitable rights which he had acquired by his application were absolutely lost.

For these reasons we are of opinion that there was error in the conclusion of the Supreme Court of the State of Kansas, and the judgments in these two cases are

*Reversed for further proceedings in accordance with the views herein expressed.*

MR. JUSTICE GRAY was not present at the argument and took no part in the decision of these cases.