# NORTHERN PACIFIC RAILROAD COMPANY *v.* AMACKER.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 61. Argued October 24, 1899. — Decided January 8, 1900.

By the act of July 2, 1864, c. 217, a grant of public land was made to the Northern Pacific Railroad Company to aid in the construction of its railroad and telegraph line. A small tract of this grant is the subject of this action of ejectment. In October, 1868, one Scott made a preëmption declaratory statement regarding this tract, and settled upon it in 1869, but abandoned it in the same year and never returned. In October, 1872, he filed an amended statement excluding the land in controversy. On February 21, 1872, the company filed its map of general route through Montana. On the 22d of April, 1872, the Commissioner of the General Land Office, by direction of the Secretary of the Interior transmitted to the local land office in Montana a diagram showing the location of the road in the district in which the subject of controversy was situated, and directed the withholding from sale or location, preëmption or homestead entry, of the odd-numbered sections within forty miles of the general route of the railroad. On May 3, 1872, McLean, a citizen of the United States, duly qualified to enter land, made a homestead entry of the tract in controversy in this case. On May 6, 1872, the diagram and order sent April 22 were received at the local land office and filed there. In the autumn of 1872 McLean placed a small building on the land in which he spent his nights until the spring of 1873 when he removed and never after resided there or made improvements. Proceedings were taken to cancel his entry, and it was cancelled in September, 1879. In July, 1882, the plat of definite location was filed, and the land in controversy is within forty miles of the general route, and within twenty miles of the line of definite location. In August, 1882, McLean died, leaving a will devising this land to his widow, which was duly probated. In March, 1883, McLean's widow applied, as his widow under the act of June 15, 1880, c. 227, 21 Stat. 237, to purchase the tract. *Held:*

(1) That whatever rights Scott might have acquired by his original declaratory statement, were lost by his amended declaratory statement;

(2) That McLean had all the rights which attached to a valid entry, and might have proceeded under the act of June 15, 1880, c. 227, 21 Stat. 237, to make the purchase thereby authorized;

(3) That his widow, having had this tract devised to her by her husband's will, duly probated, was entitled to purchase the tract as the devisee of her husband, although her application for it was made as his widow.

THIS was an action of ejectment commenced on May 8, 1891, in the Circuit Court of the United States for the District of Montana by the railroad company, plaintiff in error, to recover possession of the south one half of the northwest one quarter of section 17, township 10 north, range 3 west of the principal meridian of Montana. A trial was had, which resulted in a judgment for the plaintiff. 53 Fed. Rep. 48. This judgment was reversed by the Court of Appeals for the Ninth Circuit, 15 U. S. App. 279, and the case remanded for a new trial. The new trial was had before the Circuit Court upon an agreed statement of facts, and resulted in a judgment for the defendants, which judgment was affirmed by the Court of Appeals, and thereupon the plaintiff sued out this writ of error.

The important facts are these: On February 21, 1872, the railroad company filed in the office of the Commissioner of the General Land Office its map of general route through the then Territory (now State) of Montana. On April 22, 1872, the Commissioner, by direction of the Secretary of the Interior, transmitted to the local land office in Montana a diagram showing the portion of the line of general route extending through that district, and directed the withholding from sale or location, preëmption or homestead entry, the odd-numbered sections within forty miles of such general route. This diagram and order were received and filed in the local office on May 6, 1872. On May 3, 1872, three days before the order was received at the local land office, William McLean, a citizen of the United States and duly qualified to enter the land, made a homestead entry on the tract in controversy. In that fall he moved a small building onto the land and spent his nights there until the spring of 1873, when he married, removed from the premises, and never thereafter resided or made any improvements thereon. Proceedings were taken to cancel his homestead entry, and upon September 11, 1879, it was cancelled. On July 6, 1882, the railroad company filed a plat of the definite location of that portion of its line adjacent to the premises, and thereafter duly constructed its road on that line. The land is within forty miles of the line of general route, and also within twenty miles of the line of definite location and

construction. McLean died in August, 1882, leaving a will by which he devised the tract to his widow. This will was duly admitted to probate.

On April 21, 1876, Congress passed an act, c. 72, 19 Stat. 35, the first section of which is —

" Sec. 1. That all preëmption and homestead entries, or entries in compliance with any law of the United States, of the public lands, made in good faith, by actual settlers, upon tracts of land of not more than one hundred and sixty acres each, within the limits of any land grant, prior to the time when notice of the withdrawal of the lands embraced in such grant was received at the local land office, of the district in which such lands are situated, or after their restoration to market by order of the General Land Office, and where the preëmption and homestead laws have been complied with, and proper proofs thereof have been made by the parties holding such tracts or parcels, they shall be confirmed, and patents for the same shall issue to the parties entitled thereto."

And on June 15, 1880, it passed another act, c. 227, 21 Stat. 237, the second section of which is —

" That persons who have heretofore under any of the homestead laws entered lands properly subject to such entry, or persons to whom the right of those having so entered for homesteads may have been attempted to be transferred by *bona fide* instrument in writing may entitle themselves to said lands by paying the government price therefor, and in no case less than one dollar and twenty-five cents per acre, and the amount heretofore paid the Government upon said lands shall be taken as part payment of said price: *Provided*, this shall in no wise interfere with the rights or claims of others who may have subsequently entered such lands under the homestead laws."

On March 15, 1883, the widow of William McLean applied under this last act for the purchase of the tract. Her application was made as widow and not by virtue of any right given by the will of her husband. Her application was contested by the railroad company but sustained by the Commissioner of the General Land Office, and afterwards by the

Secretary of the Interior, and on his decision a patent was duly issued to her. W,hereupon this suit was brought to test the title conveyed by such patent.

*Mr. James B. Kerr* for plaintiff in error.   *Mr. C. W. Bunn* was on his brief.

No appearance for defendant in error.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

The contest in this case is between one claiming under a homestead entry and a company claiming under a grant in aid of a railroad. It was long ago said by this court that "the policy of the Federal Government in favor of settlers upon public lands has been liberal. It recognizes their superior equity to become the purchasers of a limited extent of land, comprehending their improvements, over that of any other person," *Clements* v. *Warner*, 24 How. 394, 397; and in a later case, that "the law deals tenderly with one who, in good faith, goes upon the public lands, with a view of making a home thereon." *Ard* v. *Brandon*, 156 U. S. 537, 543.

There is no real hardship in enforcing this rule, for if the individual seeking to maintain his homestead entry fails by reason of any defect he has no recourse on the Government for the fees he has paid or for any compensation for the time and labor he has expended, while on the other hand the general provision of railroad land grants is to the effect that if the title to any tract within the place limits fails the company may reimburse itself by a selection within the indemnity limits. It is not therefore strange that the rulings of the land department, as well as of the courts, have been uniformly favorable to the individual contesting with a railroad company the right to a particular tract of land.

Yet this would never justify an ignoring of the clear rights of the company, for the purpose of Congress in the grant must be recognized and made effective in every case to which the grant applies.

On October 5, 1868, and prior to the filing of the map of general route, there was, as appears from the agreed statement, a preëmption declaratory statement made by William M. Scott. In 1869 he settled upon the tract, built a house and resided in it, but in the fall of that year abandoned the land, moved to Helena, and never returned. On October 14, 1872, he filed an amended preëmption declaratory statement wholly excluding the land in controversy and substituting other land. Whatever right Scott may have acquired by his original declaratory statement was clearly lost by his amended declaratory statement. Indeed, it .had undoubtedly lapsed long before. *Northern Pacific Railway* v. *De Lacey*, 174 U. S. 622.

We need, therefore, only concern ourselves with the action of McLean. He did not make his homestead entry prior to the filing of the map of general route, but did before notice thereof was received in the local land office, and it is not disputed by counsel for the railroad company that if he had perfected that entry the act of 1876 would have operated to confirm his title. But the contention is that the act only applies when, as it reads, "the preëmption and homestead laws have been complied with, and proper proofs thereof have been made by the parties holding such tracts or parcels;" and it is urged that, as the agreed statement shows that McLean abandoned the land in 1873, and thereafter never complied with the requirements of the homestead law, he was not in a condition to claim any right to the land, because under the law in force at the time he made his original entry the land was not subject to entry, *Buttz* v. *Northern Pacific Railroad*, 119 U. S. 55, 72, and he could claim nothing under the act of 1876, because he did not comply with the homestead laws, or file proper proofs of any compliance therewith. In other words, it said that the land was not subject to homestead entry when he entered it, and that his entry was not made valid by the act of 1876; and therefore that the act of 1880 has no application to this case.

The writer of this opinion is much impressed with the force of these contentions, but a majority of the court hold that

they give too much force to the letter of the statutes, and do not carry out their real spirit. They are of opinion that the effect of the act of 1876 was to validate all otherwise regular preëmption and homestead entries made prior to the time when the notice of the withdrawal was received at the local land office, although such entries were made after the time when the map of general route was filed in the office of the Secretary of the Interior and the order of withdrawal made; that the withdrawal authorized by the sixth section of the act making the land' grant to the Northern Pacific Railway Company (13 Stat. 365, 369) did not vest in the company any title to the lands within the withdrawal limits, but only operated by legislative declaration and subsequent executive action to withdraw those lands from homestead or preëmption entries; that the right of the railroad company to any tract only became vested when the line of definite location was filed, and that up to that time Congress had full power to order a cancellation of the withdrawal or to make any disposition of lands within those limits which it saw fit; and that this act of 1876, rightfully construed and in accordance with the spirit of Congressional dealings with individual homesteaders and preëmptors, is to be taken as a legislative enactment that no entry was to be considered invalidated by reason of the filing of the map of general route if it was made before notice of the withdrawal was received at the local land office. If this be the true construction of this act, then McLean had all the rights which attached to a valid entry, and might have proceeded under the act of 1880 to make the purchase thereby authorized.

Before, however, the act of 1880 was passed his entry had been cancelled by reason of a failure to comply with the requirements of the homestead law in occupation, proofs and payment of the final fees. Indeed, he could not have made the proofs because he had abandoned the land. But the act of 1880 was passed before the railroad was definitely located adjacent to this land, and it was the opinion of the Circuit Court of Appeals, which is approved by a majority of this court, that its effect was to except the tract from the grant

to the Northern Pacific. That grant was of land to which "the United States have full title, not reserved, sold, granted or otherwise appropriated, and free from preëmption or other claims or rights at the time the line of said road is definitely fixed." Counsel for the railroad company contend that this right of McLean to purchase this tract was no other or different than the right of any duly qualified citizen of the United States to purchase any tract of public lands, and that as this right had not been exercised at the time the line of definite location was fixed, it could not be said that at that time any right had attached. But we think it is not a true construction of the land laws that a specified right given to a limited class to take by purchase particular tracts is in any just sense the equivalent of the general right of all citizens to purchase public lands. It is not a strained but a reasonable construction to hold that Congress by this act of 1880, "appropriated" these particular tracts, thus covered by homestead entries, even of an outlawed class, for the benefit of those homesteaders, and that they were no longer to be counted among the public lands of the United States subject to the grant to the railroad company.

One other question is presented by counsel for plaintiff in error. The right given by the act of 1880 is to the entrymen and persons to whom their rights have been transferred by "*bona fide* instruments in writing." It is contended that a widow cannot avail herself of the benefit of that statute because she does not take by any *bona fide* instrument in writing.

It is true that the application to the land office upon which the patent was issued was based upon her right as widow, and it may be questionable whether a widow is within the scope of that act; but the agreed statement of facts shows that McLean by will devised this tract to her, and that the will was duly probated; so that she held a right not simply as widow, but as devisee, taking under a *bona fide* instrument in writing, and it certainly cannot operate to defeat her right under that instrument that the land department recognized her right as widow.

For these reasons the judgment of the Circuit Court of Appeals is *Affirmed.*