HENRY RUPKE, APPELLEE, V. MARY MORAN ET AL., APPELLANTS.

FILED JUNE 29, 1910. NO. 16,040.

1. **Quieting Title:** RIVAL HOMESTEAD CLAIMANTS. In an action by one of two rival homestead claimants to a tract of public land to quiet his title and enjoin the other claimant from interfering with his possession thereof, it is proper for the state courts to decline to pass upon the question of ownership until after the government has parted with its title by duly issuing a patent therefor to one of such claimants.

2. ———: ———: INJUNCTION. In a proper case the district court may grant a restraining order to the one who holds the receiver's final receipt for the land in question in so far as it may be necessary to protect his homestead rights.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Affirmed.*

*L. C. Burr,* for appellants.

*W. T. Stevens* and *Claude Wilson, contra.*

BARNES, J.

This is a suit in equity to restrain the defendants from interfering with the plaintiff in his attempt to comply with his right to perfect his homestead entry under the statutes of the United States upon the northeast quarter of the northeast quarter of section 33, township 11 north,

of range 7 east of the sixth P. M., situated in Lancaster county, Nebraska, and to quiet his alleged title thereto. The plaintiff had judgment granting him a restraining order, but the trial court declined to consider the question of title. The defendants have appealed.

The cause was submitted to the district court for Lancaster county upon a stipulation or agreed statement of facts, which we find to be in substance as follows: On the 7th day of September, 1876, one Joseph P. Loosee, who had been a soldier of the civil war, obtained a receiver's final receipt from the register and receiver of the local land office at Lincoln, Nebraska, to said land as an additional homestead entry. No patent has ever been issued to said land, and the legal title thereto is still held by the government. On the same day that he received his final certificate Loosee and his wife made a warranty deed to said land to one James Moran. On April 9, 1877, the commissioner of the general land office of the United States held Loosee's entry for cancelation for the reason that the land was within and a part of the grant to the Burlington & Missouri River Railroad Company, and was not subject to homestead entry. On May 1, 1877, Loosee appealed from the decision of the commissioner of the general land office canceling his said entry, and under date of April 20, 1878, the secretary of the interior affirmed the decision of the land commissioner. On May 1, 1878, the commissioner of the general land office entered an order formally canceling on the records of his office Loosee's additional homestead entry of the land in controversy. On February 23, 1882, Loosee filed an application for a reinstatement of his entry, and on May 18, 1882, his application was denied. The land in question on the 29th day of March, 1888, was opened for homestead entry by an order of the commissioner of the general land office. On the 20th day of May, 1891, one Edward L. Sayer applied to the local land office to enter said tract of land as a homestead, and received the usual register and receiver's receipts therefor. On February

13, 1896, a hearing was had before the register and receiver of the local land office of the United States at Lincoln, Nebraska, between the said Sayer, on the one part, and Joseph P. Loosee and the heirs of James Moran, who are now the defendants herein, on the other part, which hearing or contest involved the right of homestead entry to the land in question. The register and receiver of the Lincoln land office in a joint opinion found in favor of said Sayer and against Loosee and the defendants herein. Loosee and the defendants appealed to the general land office of the United States, and the commissioner affirmed the decision of the local register and receiver, and ordered that Sayer's homestead application should be allowed. In his decision the commissioner found that James Moran, to whose rights the defendants herein have succeeded, had exhausted his homestead rights prior to September 7, 1876, and was not qualified to take the land under the preemption laws for the reason that he was then the owner of 640 acres of land to which the tract in question is adjacent. Loosee and the Morans again applied to the secretary of the interior, who on the 26th day of October, 1896, affirmed the decision of the commissioner of the general land office allowing Sayer's entry. Loosee and the defendants herein filed a motion for a review of said decision, which was on February 27, 1897, denied. Sayer abandoned his homestead entry, and on February 7, 1907, it was canceled for that reason. On the 11th day of February of that year the plaintiff, Henry Rupke, also an honorably discharged soldier of the civil war, a resident and citizen of the United States, made a homestead entry on the said land and received the register and receiver's receipts therefor. Immediately thereafter he attempted to take possession of the land, at least to the extent of erecting a house or residence thereon, and to comply with the provisions of the homestead laws of the United States in order to perfect his said entry. Thereupon the defendants, who are in possession of said land, refused to permit him to go upon the premises or per-

form any of the acts necessary to perfect his homestead entry, but at all times have by threats and force of arms prevented him from so doing. The decree of the trial court was in his favor, and enjoined the defendants from interfering with him in any manner, or from in any way preventing him from going upon the land in question and perfecting his homestead entry.

Defendants contend at the outset that they are the owners of the premises in question; that Loosee had a right to make a deed to Moran as soon as he received his final receipt, and that by so doing Moran took absolute title to the premises. On the other hand, it is contended that Moran took no better title to the land than Loosee had; that he took it subject to all rights on the part of the government to cancel Loosee's entry the same as though he had not parted with his interest to Moran. In *Peyton v. Desmond*, 129 Fed. 1, it is said: "One who purchases from an entryman, on the faith of a final receipt or patent certificate, before the issuance of a patent, takes only the equity of his vendor, subject to the authority of the land department to cancel the entry, while the legal title remains in the United States, if it is found that the entry is based upon an error of law or a clear misapprehension of the facts, which, if not corrected, will lead to the transfer of the government's title to one not entitled to it. The land department being a special tribunal to which congress has confided the administration of the public land laws, the final judgment of that department as to matters of fact properly determinable by it is conclusive, when brought to notice in a collateral proceeding." In *Swigart v. Walker*, 49 Kan. 100, it was held: "The commissioner of the general land office of the United States has authority to cancel a final homestead receipt and set aside the entry at any time before the patent issues, and a purchaser from the entryman after a final receipt is given and before the issuance of the patent takes the land subect to this supervisory power of the commissioner and of the secretary of the interior."

Defendants insist that, when Loosee made his filing on the land in question as an additional soldier's homestead entry, he became the absolute owner thereof; that title passed *eo instante* from the government to him, and his immediate transfer thereof to James Moran invested his grantee with an indefeasible title thereto. In support of this contention, defendants rely principally upon the two cases of *Webster v. Luther,* 163 U. S. 331, and *Ard v. Brandon,* 156 U. S. 537. At first blush, it would seem that those cases sustain the defendants' position. A careful examination, however, discloses that in *Webster v. Luther, supra,* the widow of a deceased soldier made application to the local land office to enter the land there in question as an additional soldier's homestead, and received the register and receiver's receipt therefor; that her entry was approved, and in due time she received a patent for the lands which conveyed to her the full legal title; that, when she received the register and receiver's receipts as aforesaid, she executed a power of attorney to one Boggs, by which she empowered him to sell the land upon such terms as he should see fit, receive the money therefor from the purchaser, and deliver to him such a deed or conveyance thereof as to him seemed necessary; that Boggs sold the land and deeded it to Luther, which deed was duly recorded; that thereafter, and when she received the patent from the United States, she deeded the land to Webster, and the controversy was between them as to who was the owner of the land and had the legal title thereto. The supreme court of the United States held that, when the widow made her filing, paid the fees and received the receiver's final receipt for the land, *which was subject to entry as an additional soldier's homestead,* she became the owner thereof; that she could then legally sell and dispose of it even before she received the patent, and that by the sale and conveyance made by her attorney in fact Luther took the legal title thereto.

In the *Ard* case, *supra,* which is nearer in point than any of the other authorities cited, it appears that one who

was qualified to make a homestead entry ·in good faith applied to make such entry upon public land within the indemnity limits of a railroad grant, but not within its place limits, and which had not been withdrawn from homestead entry and settlement, but was at the time he made his application subject to such entry. His application was refused, and afterwards the land was withdrawn from entry and was patented to the railroad company. The applicant remained upon the land and cultivated it, and the action was one to oust him of possession. It was held that his application was wrongfully rejected, and that his rights under it were not affected by the fact that he took no appeal.

It will thus be seen that the point of distinction is, in those cases the land was subject to homestead entry when the applications were made, while in the case at bar the land was not subject to such entry, and Loosee's attempted entry was canceled for that reason. That this distinction is fatal to defendants' contention seems clear. Again, in both of those cases the government had parted with its title to the land when the actions were commenced, while in this case the title is still in the United States. We are therefore of opinion that those authorities are of no assistance in the solution of the question now before us, and until such time as the government parts with its title we should not attempt to determine the question of ownership or title thereto.

It is further contended that they have acquired title by adverse possession, and point to the fact that they have been in possession of the land for more than 30 years. It is conceded that one cannot acquire title by adverse possession as against the government; but it is said that, if the land belonged to the railroad company, then the defendants' possession has ripened into a perfect title, and the court should hold that they are the owners thereof. The trouble with this contention is that it appears from the agreed statement of facts that the railroad company has never complied with the terms of its

24

grant, and has not heretofore, and does not now, claim any interest therein; that it- has never been a party to any of.the proceedings, either before the local land office or the department of the interior, and it is not now a party to this suit. Therefore, it cannot be said that defendants have acquired title by adverse possession as against the railroad company, because it has never had any title whatever to the lands in question. It thus seems clear that defendants' contention cannot be upheld.

It appears from the record that the trial court declined to pass upon the question of title, dismissed defendants' cross-petition without prejudice to any future action, and enjoined them from disturbing the plaintiff in his attempt to exercise sufficient dominion over the land in question to protect his homestead rights. In· this there was no error, and the judgment of the district court is

AFFIRMED.