## MOSS *v.* DOWMAN.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH
CIRCUIT.

No. 141. Argued and submitted January 81, February 1, 1900. — Decided February 26, 1900.

Decisions of the land department in contest cases on questions of fact are conclusive.

Dowman went upon the public land in controversy, then unoccupied, on the 19th September, 1890, built a cabin and continued to live there. November 18, 1890, he made a formal homestead entry in the local land office, and after five years of continued occupancy and proof of the same he received a patent. On May 7, 1890, one Doran made a homestead entry of the same land without occupying it, which he subsequently relinquished, Moss pay-

ing him $1000 therefor, and thereupon Moss on the 24th of October, 1890, filed that relinquishment in the local land office, and made a homestead entry in her own name. April 22, 1891, she appeared on the land, commenced the construction of a house, and occupied it when finished. A contest between the two as to which had the right to acquire title was finally settled by the Secretary of the Interior in favor of Dowman. *Held*, that the decision of the Secretary was correct.

ON March 17, 1897, a patent was issued to the appellee, defendant below, for the southeast one quarter of section 22, in township 65 north, of range 4 west of the fourth principal meridian, in the State of Minnesota. Thereafter, and on March 23, 1897, the appellant, plaintiff below, filed her bill in the Circuit Court of the United States for the District of Minnesota, seeking to charge the defendant as trustee of the legal title for her benefit. To the bill as thus presented a demurrer was filed, which, on November 4, 1897, was sustained by the Circuit Court, and the bill dismissed. On appeal to the Circuit Court of Appeals for the Eighth Circuit this decree was, on June 27, 1898, affirmed, 60 U. S. App. 69, and to review this decision this appeal was taken.

The title of defendant, as disclosed by the bill and exhibits, is as follows: On September 19, 1890, he went upon the premises in controversy, then unoccupied, built a cabin, and continued to live therein (having on November 18, 1890, made formal homestead entry in the local land office) during all the proceedings in the land department, hereinafter stated, and until he had completed five years of occupancy, and then upon proof of such continued occupancy was awarded and received a patent on account of his homestead entry and occupation. The claim of the plaintiff on the other hand rests upon an entry in the land office prior to that of defendant, followed by a settlement on the land later than his. From 1885 to 1890 this tract, though never settled upon or occupied by any one, was the subject of repeated entries at the local land office, such entries being made under the homestead law, the later ones being as follows: On May 7, 1890, Robert H. Doran made a homestead entry. Subsequently, the plaintiff paid to Doran the sum of one thousand dollars for a relinquish-

ment of his homestead entry, and on the 24th day of October, 1890, she filed in the local land office that relinquishment, and at the same time made a homestead entry in her own name. On April 22, 1891, two days less than six months after her entry, she appeared on the land, with assistants, material, furniture, etc., and commenced the construction of a home, completed and occupied the same. A contest between the plaintiff and defendant in reference to the right to acquire title to this property was initiated in the local land office, and carried by appeal to the Commissioner of the General Land Office, and finally to the Secretary of the Interior, resulting in a decision by the latter on December 19, 1894, in favor of the defendant; and in pursuance thereof the patent was issued to him.

*Mr. James K. Redington* for appellant. *Mr. Thomas J. Davis* was on his brief.

*Mr. Charles A. Towne* for appellee, submitted on his brief.

Mr. Justice Brewer delivered the opinion of the court.

Repeated rulings of this court have settled that the decisions of the land department in contest cases on questions of fact are conclusive.

Defendant by taking actual possession on September 19, 1890, his entry in the land office on November 18, 1890, his continued occupation and proof thereof, was entitled to the patent which was thereafter issued to him, unless other facts found by the department show that as matter of law a superior right was vested in the plaintiff. Such facts it is contended are the successive formal entries in the land office unaccompanied by any actual possession of the land. It may be well to state some of these in detail: On May 11, 1888, following similar prior action, Lyman E. Thayer, of Wausau, Wisconsin, made a homestead entry. On November 10, 1888, one day less than six months thereafter, Thayer relinquished,

and Julia McCarty made a like entry. On May 9, 1889, one day less than six months thereafter, McCarty relinquished, and Napoleon B. Thayer made a like entry. On November 9, 1889, exactly six months thereafter, Thayer relinquished, and John A. Murphy made a similar entry. On May 7, 1890, two days less than six months thereafter, Murphy relinquished, and Robert H. Doran made a like entry. On October 24, 1890, Carrie Moss paid Doran one thousand dollars for a relinquishment of his entry, and on the same day, having obtained that relinquishment, she filed it in the land office and made her entry. Thereafter, and on April 22, 1891, two days before the expiration of six months, she went upon the land, and made improvements in the way of building and otherwise. As the Secretary says in his opinion : " Although numerous persons have made homestead entry of this land, none appear to have done so in good faith, for none appear to have made any settlement during the period of five years in which it was entered and relinquished every six months." In other words, the findings of fact made by the land department show that the first person who made actual settlement upon the premises was the defendant, that his settlement and occupation continued for the term prescribed by the statute, and therefore that such settlement and occupation thus continued entitled him to a patent unless defeated by these proceedings in the nature of entries without settlement. In respect to them it was found that for five years this tract had been subjected to repeated entries, each entry made within six months of the prior entry and accompanied by a relinquishment of such prior entry, and thus for five years the land, without any settlement, without any occupation, was a football for homestead speculators, and withdrawn from actual settlement.

Counsel for appellant thus states the question :

"The application of supposed law to this state of fact, in the determination by the Secretary of the Interior of the rights of the litigants respectively, was as follows:

" ' The only question to determine in this case is, whether Dowman was a settler in good faith at the time Doran's relinquishment was placed on file in the local office. For, although

Doran's entry was erroneously allowed, being of record it segregated the land, and therefore no right could be initiated by reason of the settlement. But the instant the relinquishment was filed in the local office, the right of the settler on the land attached and an entry could not defeat it.

\*  \*  \*  \*  \*

" 'In view of these facts and that no evidence has been introduced which shows that Dowman's settlement was not in good faith, under the established rulings of this department the settler Dowman's rights attached instantly on the filing of Doran's relinquishment, and is therefore superior to Moss's entry.'

" Upon this application of law to ascertained facts as recited, and upon no other or different facts, patent issued to appellee as hereinbefore recited."

We are content to take this statement, and upon it are clearly of the opinion that the decision of the land department was correct. The obvious purpose of the preëmption and homestead statutes of the United States is to secure to the actual settler the land upon which he has settled, and to give him the prior right to perfect title by purchase or continued occupation. While undoubtedly under the provisions of the statutes and the regulations of the land department there are at times opportunities for a speculator to obtain title to public lands, it must be always remembered that in the eye of the public land laws of the United States the speculator is never an object of favor. Preëmption and homestead laws were enacted for the benefit of the actual settler, and to that end they should be construed and administered. The plaintiff herein contends that this tract of land was withdrawn for five years from settlement by mere successive entries in the land office, and could be kept thus withdrawn in the future indefinitely, while speculators wait such time as it becomes convenient to them to perfect title by settlement and occupation. The proposition thus made is so offensive to the spirit and purpose of the land laws of the United States that unless the statutes make such a result necessary from a true construction of their language it ought to

be rejected. Again and again has this court affirmed the proposition that the settler is the beneficiary of the preëmption and homestead laws of the United States. In *Lytle* v. *Arkansas*, 9 How. 314, 333, it was said:

" The claim of a preëmption is not that shadowy right which by some it is considered to be. Until sanctioned by law, it has no existence as a substantive right. But when covered by the law, it becomes a legal right, subject to be defeated only by a failure to perform the conditions annexed to it. It is founded in an enlightened public policy, rendered necessary by the enterprise of our citizens. The adventurous pioneer, who is found in advance of our settlements, encounters many hardships and not infrequently dangers from savage incursions. He is generally poor, and it is fit that his enterprise should be rewarded by the privilege of purchasing the favorite spot selected by him, not to exceed 160 acres. That this is the national feeling is shown by the course of legislation for many years."

So also in *Clements* v. *Warner*, 24 How. 394, 397:

" The policy of the Federal government in favor of settlers upon public lands has been liberal. It recognizes their superior equity to become the purchasers of a limited extent of land, comprehending their improvements, over that of any other person."

Again, in *Bohall* v. *Dilla*, 114 U. S. 47, 51:

" Those laws are intended for the benefit of persons making a settlement upon the public lands, followed by residence and improvement and the erection of a dwelling thereon."

And again, in *Anderson* v. *Carkins*, 135 U. S. 483, 487:

" The theory of the homestead law is, that the homestead shall be for the exclusive benefit of the homesteader. . . . The law contemplates five years' continuous occupation by the homesteader, with no alienation except for the named purposes."

These quotations might be multiplied, and nothing contradictory thereof can be found in our decisions. Their oft repetition simply accentuates the proposition heretofore stated, that the actual settler is the one for whose benefit the homestead and preëmption laws were enacted.

Counsel say that "a *prima facie* valid entry of record oper-
ates to appropriate the land covered thereby and to reserve it
pending the existence of such prior entry from all subsequent
disposition;" that by analogy to express statutory provisions,
a homestead entry without settlement is adjudged to be opera-
tive for six months; "that from 1859 to 1885, a period of over
twenty-six years, an uninterrupted chain of cases held that no
right upon cancellation of an entry inured by reason of a settle-
ment made during its existence; that to hold otherwise would
be to enable a trespasser to benefit by his own wrong, and that
any such pretended claim was invalid and of no effect against
another entry made at the time of cancellation."

We deem it unnecessary to consider the correctness of these
rulings or the power of the land department to secure to one
who has made a formal entry a certain length of time in which
to perfect his settlement and improvement. The Revised Stat-
utes in terms give no such right. It is true that section 5 of
the act of May 20, 1862, c. 75, 12 Stat. 392, 393, carried into
the Revised Statutes as section 2297, provides —

"If at any time after the filing of the affidavit, as required
in section twenty-two hundred and ninety, and before the expi-
ration of the five years mentioned in section twenty-two hundred
and ninety-one, it is proved, after due notice to the settler, to
the satisfaction of the register of the land office, that the person
having filed such affidavit has actually changed his residence,
or abandoned the land for more than six months at any time,
then and in that event the land so entered shall revert to the
Government."

But that section simply authorizes the Government to annul
an entry if thereafter it appears that the homesteader has actu-
ally changed his residence or abandoned the land for more than
six months. But the very phraseology, "changing residence,"
"abandoning land," implies a settlement on the land which is
changed and abandoned, and does not authorize a waiting for
settlement and occupation. On the other hand, section 2291,
Rev. Stat., providing for final proof, requires an affidavit that
the applicant has "resided upon or cultivated the same for the
term of five years immediately succeeding the time of filing

the affidavit." In other words, the one section contemplates an immediate settlement and occupation, and the other provides for temporary abandonment.

It is also true that on March 3, 1881, said section 2297 was amended by adding this proviso:

"That where there may be climatic reasons the Commissioner of the General Land Office may, in his discretion, allow the settler twelve months from the date of filing in which to commence his residence on said land under such rules and regulations as he may prescribe." Act of March 3, 1881, c. 153, 21 Stat. 511.

But this contemplates a separate ruling for specific reasons in particular cases, and no such ruling was applied for in the present case. It may be argued, it is true, that in view of the practice of the department it was a Congressional recognition of its validity and an enlargement of the time in the particular cases specified.

But, as we have said, we do not feel called upon to decide upon the validity of any ruling or practice which secures to one making a homestead entry the right to perfect that entry by subsequent settlement and occupation.

In the case at bar every right which Doran possessed was ended on October 24, 1890, by the filing of his relinquishment in the local land office. The act of May 14, 1880, c. 89, 21 Stat. 140, provides: "That when a preëmption, homestead or timber culture claimant shall file a written relinquishment of his claim in the local land office, the land covered by such claim shall be held as open to settlement and entry without further action on the part of the Commissioner of the General Land Office."

At the moment of filing that relinquishment, Dowman, the defendant, was a settler in occupation of the tract, and Moss, the plaintiff, made her application to enter, and the question is as to the relative rights, at the moment the land becomes open to entry, of one a settler in actual occupation and one making a formal entry in the land office. For reasons heretofore stated, we have no doubt that the settler is entitled to preference. It is true he must perfect his right of settlement by making an

entry in the land office, and section 3 of the act of May 14, 1880, 21 Stat. 140, heretofore referred to, provides:

" That any settler who has settled, or who shall hereafter settle, on any of the public lands of the United States, whether surveyed or unsurveyed with the intention of claiming the same under the homestead laws, shall be allowed the same time to file his homestead application and perfect his original entry in the United States land office as is now allowed to settlers under the preëmption laws to put their claims on record, and his right shall relate back to the date of settlement, the same as if he settled under the preëmption laws."

Within less than thirty days from the filing of Doran's relinquishment Dowman made a formal entry in the land office, and that entry, based upon actual possession, is entitled to preference over an entry without possession.

Whenever a homestead entry has been made, followed by no settlement or occupation on the part of the one making the entry, and that homestead entry has by lapse of time or relinquishment, or otherwise, been ended, any one in actual possession as a settler and occupier of the land has a prior right to perfect title thereto. We indorse in this respect what was said by the learned judge of the Circuit Court:

" That Dowman had acquired no rights by his settlement prior to Doran's relinquishment, and might as respects Doran have been regarded as a trespasser, makes no difference. When Doran relinquished Dowman ceased to be a trespasser, and was not only an actual, but a lawful settler. There was no evidence of *mala fides* about Dowman's settlement which should affect its legality when the time came for a right to attach to it under the land laws. Neither Doran nor any of the long line of speculative homesteaders who had kept up holdings by entries and relinquishments every six months had ever appeared on the land. The object of the homestead laws is not to encourage speculation, but settlement, and if Dowman knew all the antecedent facts he might well expect that an actual settler would acquire the right to the land, lawfully, upon the next relinquishment, and make his settle-

ment as the Secretary finds as a fact that it was made — in good faith."

For these reasons we are of opinion that the judgment of the Court of Appeals was right, and it is     *Affirmed.*