## RUSSELL v. HACKING et al.

No. 5331. Decided November 19, 1934. (37 P. [2d] 1105.)

1

*A. A. Duncan,* of Salt Lake City, for appellant.
*Homer Holmgren,* of Salt Lake City, for respondents.

FOLLAND, Justice.

This is a controversy over a right to possession of 640 acres of land described as section 1, township 5 south, range 4 west, Salt Lake meridian. The plaintiff and defendant Wayne Hacking each claim priority of possession as prospective entrants under the Stockraising Homestead Law. The defendant Ault makes no claim to the land, and he will not be referred to hereafter. The subject-matter of the case is unsurveyed and uninclosed mountainous grazing land located in Tooele county, Utah. The trial court made findings favorable to the defendant, and entered a decree that, as against the plaintiff, defendant is entitled to the sole and exclusive possession, use, and occupancy of the land; that defendant's homestead claim is superior and prior to any claim by plaintiff; and enjoined plaintiff from entering on the land or interfering with defendant's occupancy.

Plaintiff appeals and assigns as error that the findings of fact are not supported by, but are contrary to, the evidence, that the conclusions of law and decree are not supported by the evidence or the findings of fact, and are against law, and that there is no pleading to support the affirmative judgment in favor of defendant.

The first claimant to the land was Alvin Russell, a brother of plaintiff, who, before the filing of the complaint in this cause, had abandoned his claim. He, in the fall of 1925, marked the boundaries of the section by placing a monument at each corner and posted notices that he claimed it under the Stockraising Homestead Act. He first had a tent on the tract and later built a cabin thereon. Whether he established and continued his residence thereon with the intention of making it his home was a fact affirmed by plaintiff and denied by defendant. The court made finding that "at no time did he or his family live upon said land as a home to the exclusion of a home elsewhere." Alvin

Russell's possession is relied on by plaintiff as effecting a segregation of the land from the public domain, thereby making defendant's attempted settlement invalid when initiated. Hacking, on July 25, 1928, went on the land, placed monuments on each corner, posted notices that he claimed the section as a homestead under the Stockraising Homestead Act, and commenced the erection of a cabin. He remained about three weeks, and completed his cabin up to the square, when he sustained an accidental injury to his foot and had to leave in order to have the foot cared for. At the time he went on the place he had information that Alvin Russell claimed it as a homestead, but Alvin was not then on the land, and Hacking did not see him until August 21st, when Alvin and his father came to the section and notified Hacking to get off the land or they would obtain a court order. The accident to Hacking occurred the next day. A restraining order was on August 23, 1928, issued by the district court of Tooele county in the case of Alvin Russell v. Wayne Hacking, which order was served on Hacking at Provo, Utah. By this order Hacking was restrained from entering upon the land in section 1, building a cabin, or in any way interfering with Alvin's use and enjoyment thereof, until the further order of court. The case was never tried, and the restraining order remained in effect until the case was dismissed October 13, 1931. In June, 1930, Alvin sold his cabin on section 1 to his brother Authenia, the plaintiff in this action, and left the state with his family in the fall of 1930. Alvin is not now assertnig any claim whatever to the land in dispute.

The plaintiff on or about June 19, 1931, went on the land, marked the corners, posted notices of his homestead claim, and took up his residence in the cabin he had purchased from his brother. He, at the time, had information of Hacking's claim and of the existence of the restraining order in the case of Alvin Russell v. Hacking. Upon learning of Alvin's abandonment of the claim and removal from the state, Hacking on July 10, 1931, went on the land with

a herd of sheep. He had been there three days when he was served with a restraining order issued by the district court of Tooele county in the instant case.

The following facts are not in dispute: That Alvin abandoned all claim to the land either in June of 1930, when he sold his cabin, or in the fall of 1930, when he left the state; that Alvin sold only the personal property on the land and made no attempt to sell or transfer any possessory or property right in or to the homestead; that Hacking was prevented from completing his cabin or living on the land by orders of court; and that his intrusion on the premises was effected without force or violence, and was not accompanied by destruction of any property. The land was unsurveyed at the time, and therefore not subject to entry under the laws of Congress, but open only for the institution of possessory rights by qualified prospective homestead entrants.

There is some evidence in the record from which it may be inferred that at some time prior to the trial the land had been surveyed by the government but the record fails to disclose that either of the parties to this action has made any filing or entry of the tract in the land office.

The question before us is not whether plaintiff or defendant shall be awarded title to the land, a matter exclusively within the jurisdiction of the land department of the government, but merely to decide which of the parties is entitled to remain on the tract and enjoy the possession thereof. The crucial point in the case is whether Hacking's attempted initiation of the homestead settlement was such that upon abandonment of Alvin Russell's claim he was entitled to priority over Authenia Russell's subsequent settlement, and therefore entitled to possession as against him. Plaintiff contends that Hacking was a mere trespasser because of Alvin's occupancy, and could not by his trespass initiate any valid claim. In support of this contention, plaintiff cites *Atherton* v. *Fowler*, 96 U. S. 513, 24 L. Ed. 732. In that case it was held that no right of pre-emption

can be established by settlement and improvement on a tract of public land where the claimant forcibly entered upon the possession of one who had already settled upon, improved, and inclosed the tract; that such intrusion was an unlawful trespass which cannot initiate a right of pre-emption. The Supreme Court of the United States in the subsequent case of *Belk* v. *Meagher*, 104 U. S. 279, at page 287, 26 L. Ed. 735, referring to the Atherton Case, said:

"There is nothing in *Atherton* v. *Fowler*, 96 U. S. 513 [24 L. Ed. 732], to the contrary of this. In that case it was held a right of pre-emption could not be established by a forcible intrusion upon the possession of one who had already settled upon, improved, and enclosed the property. Upon that proposition the court was unanimous. We also all agree that if a peaceable entry had been made on lands which had not been enclosed or improved, a good right might have been secured. The only difference of opinion we had was as to whether the entry in that case was by force or peaceably. A majority of the court thought it was forcible, while the minority considered that the case had been fairly put to the jury on the question of forcible or peaceable entry, and the effect of the verdict was that it had been peaceable."

Plaintiff also cites *Switzler* v. *Earnheart*, 59 Or. 344, 117 P. 296; *Earnhart* v. *Switzler*, 231 U. S. 766, 34 S. Ct. 327, 58 L. Ed. 472, wherein the defendant obtained possession by fraudulent agreement with plaintiff's lessee and thereafter held possession by force.

Defendant contends that Alvin's occupation was not such a compliance with the law as to exclude the tract from occupation by another, and, if it be held that Alvin initiated a valid settlement, yet when he failed to continue to reside thereon that this avoided his settlement so that an intervening settlement would take priority, and that when he abandoned all claim to the land his claim became void ab initio so far as the defendant's claim is concerned.

It is well settled that no right of possession can be acquired against another already in possession where the claimant forcibly or by stealth intruded upon the possession

of one who had already settled upon, inclosed, and improved the tract; such intrusion being a mere trespass. Atherton v. Fowler, supra; Switzler v. Earnheart, supra; Hambleton v. Duhain, 71 Cal. 136, 11 P. 865; and Denee v. Ankeny, 246 U. S. 208, 38 S. Ct. 226, 62 L. Ed. 669. But the adjudicated cases and land department decisions recognize a right in bona fide contestants to initiate a lawful claim to unappropriated public land by peaceable adverse settlement thereon and to continue to reside thereon and make improvements pending an adjudication by the land department as to which of the contestants has the superior right where such settlement is effected without violence or fraud or destruction of improvements placed on the land by others. Belk v. Meagher, supra; Moss v. Dowman, 176 U. S. 413, 20 S. Ct. 429, 44 L. Ed. 526; Thallman v. Thomas (C. C. A.) 111 F. 277; Nevada Sierra Oil Co. v. Home Oil Co. 98 F. 673; Peckham v. Faught, 2 Okl. 173, 37 P. 1085; Morrow v. Warner Valley Stock Co., 56 Or. 312, 101 P. 171; Noble v. Roberts, 28 Land Dec. 480; and Shaw v. Russell, 38 Land Dec. 275. Whether the first locator has complied with the law as to residence and improvements is in cases between persons claiming possessory rights a question of fact for the court or jury to determine from all the evidence. Carroll v. Price (D. C.) 81 F. 137; Staininger v. Andrews, 4 Nev. 59 (3, 4 Republication 567). A settlement to be effective as a segregation of the land from the public domain must be made in good faith and followed by substantial compliance with the requirements of the law respecting residence and improvements. Great Northern R. Co. v. Reed, 270 U. S. 539, 46 S. Ct. 380, 382, 70 L. Ed. 721. In that case the court said:

"The term 'settlement' is used as comprehending acts done on the land by way of establishing or preparing to establish an actual personal residence—going thereon and, with reasonable diligence, arranging to occupy it as a home to the exclusion of one elsewhere. The law makes it plain that there must be a definite purpose 'in good faith to obtain a home' by proceeding 'faithfully and honestly' to comply with 'all the requirements.' And the decisions made and instructions

issued by the officers charged with its administration show that they uniformly have taken the position that a claim cannot be initiated by asserted acts of settlement which are only colorable and done with a purpose to hold the land for speculation or while maintaining an actual residence elsewhere. The instructions say: 'Settlement is initiated through the personal act of a settler placing improvements on the land or establishing a residence thereon. * * * When settlement is made on unsurveyed lands the settler must plainly mark the boundaries of all land claimed. Within a reasonable time after settlement actual residence must be established on the land and continuously maintained.' " See, also, *Lias* v. *Henderson*, 44 Land Dec. 542; *Stephenson* v. *Pashgian*, 42 Land Dec. 113.

An essential requirement of the law is continuous actual residence on the land by the homesteader with intention to establish a home there to the exclusion of one elsewhere. *United States* v. *Peterson* (C. C. A.) 34 F. (2d) 245; and *United States* v. *Bennett* (C. C. A.) 296 F. 409; *Johnson* v. *United States* (C. C. A.) 51 F. (2d) 54.

The evidence with respect to Alvin's residence on the tract is in conflict. Alvin did not testify. On behalf of plaintiff, testimony was adduced to the effect that Alvin had marked the corners and posted notices in the fall of 1925; that he commenced the construction of a cabin, and while doing so lived in a tent; that he later bought a cabin from a Mr. Bates at a time when it was supposed this cabin was on section 1, and that he lived therein. Later, upon survey, it was ascertained this cabin was not on the tract, and Alvin commenced the construction of another cabin, and while doing so lived in a tent. This was the state of affairs in 1928 when Hacking went on the land and initiated his settlement. On the other hand, it was shown that Alvin was a married man during the entire time of his alleged residence on the section, but that his wife and children never lived there, he maintaining a home for his family during part of the time in Tooele City, and part of the time on his father's ranch at St. John; that his wife was on the land only a few times, and that he slept there only two and three nights a week at most; that during

part of the time he worked in the mines at Bauer and lived with his family at Tooele City. After reviewing the entire evidence, we are not disposed to disturb the finding of the trial court that "at no time did he or his family live upon said land as a home to the exclusion of a home elsewhere, but on the contrary the family of said Russell lived at the ranch of his father in St. John or in the City of Tooele, and were never upon said homestead land except occasionally." Hacking, therefore, initiated a valid settlement at the time he commenced building his cabin.

It is not disputed that Alvin abandoned all claim to the land in 1930 and with his family left the state to make his residence elsewhere. The restraining order against Hacking continued in force, however, until October 13, 1931. If it be assumed that Alvin's settlement is valid in all respects and that his residence on the land was sufficient to comply with the laws, yet when he abandoned his claim the land was then subject to settlement by another. *Carroll* v. *Price*, supra. If Hacking had been residing on the land, even though the initiation of his claim had been premature, he would, by reason of such residence and occupancy after abandonment by the first claimant, have a prior right to possession. *Svor* v. *Morris*, 227 U. S. 524, 33 S. Ct. 385, 57 L. Ed. 623; *Ganus* v. *State of Alabama*, 46 Land Dec. 263; *Hyndman* v. *Stowe*, 9 Utah 23, 33 P. 227; and *Moss* v. *Dowman*, 176 U. S. 413, 20 S. Ct. 429, 44 L. Ed. 526. Hacking, however, was not residing on the land during the time after abandonment by Alvin and initiation of the settlement right of Authenia, but was during all that time under judicial restraint, so that he was unable to go on the land or assert any right to possession thereof. It seems to be well settled that, so long as one is restrained by court order from going on a homestead claimed by him, he does not lose any of his rights and his settlement claims remain intact to be asserted as soon as the judicial restraint is removed. *Hall* v. *Armann*, 41 Land Dec. 430; *Hyde* v. *Kile*, 51 Land Dec. 174; and *Smiley* v. *Jordan*, 43 Land Dec.

188.   Since Hacking lost no rights he may have had while under judicial restraint, it follows that he, during such time, must be regarded as a claimant in good faith to the possession of the land from which he had been excluded, and on  which he had initiated a settlement by marking the corners, posting notices, and commencing the construction of his cabin.   When he learned of Alvin's abandonment, he again went on the claim, notwithstanding the restraining order, but was again removed therefrom by the restraining order obtained by Authenia in the present action.   Thus, by reason  of the action of the Russell brothers, Hacking was effectively kept off the land, prevented from asserting or consummating any rights he may have had, either to possession or residence, or the initiation of a new settlement during all the time the land was free from any claim by either of the Russells or anyone else other than Hacking himself.   Under these circumstances, the plaintiff will not be heard to say that defendant did not establish a valid settlement when he was prevented from perfecting his claim by the plaintiff and his brother.   *Rice* v. *Simmons*, 43 Land Dec. 343.   The courts do not look with favor on conduct of claimant which savors of an attempt to exclude another from perfecting his claim to public land while at the same time he does not himself substantially comply with the law in a bona fide effort to perfect his own asserted claim.   As stated by the court in *Great Northern R. Co.* v. *Reed,* supra :

"A claim cannot be initiated by asserted acts of settlement which are only colorable and done with a purpose to hold the land for speculation or while maintaining an actual residence elsewhere."

See, also, *North Perry Townsite* v. *Malone*, 23 Pub. Land Dec. 87.   From the record before us, it is inferable at least that Alvin Russell and Authenia Russell were attempting to hold the land for use by themselves, and thus prevent Hacking from going on the land for any purpose, while at the same time making no entry in the land office or otherwise effecting a valid claim as a homestead entry.

Our attention has not been called to, nor have we found, a case exactly in point on the facts. A case, however, most nearly approaching the situation before us is *Hall* v. *Armann*, supra. There the subject of the controversy was unsurveyed public land. The right involved was a settlement right. The prior claimant obtained a restraining order which kept the subsequent claimant off the land after he had time only to erect a cabin and do some little cultivation of the soil. The first claimant sold his improvement to a third party who took up residence after abandonment of the first claimant and while the second claimant was under judicial restraint. Adams, the First Assistant Secretary of the Interior, in deciding the contest, said:

"The preferential right of entry conferred upon homestead settlers by section 3 of the act of May 14, 1880 (21 Stat. 140), is, like the right created in favor of successful contestants by section 2 of said act, a personal privilege which can not be transferred to another. Neither right constitutes any interest or estate in the land, nor segregates it from the public domain and the right of others to apply for or to settle upon the land, subject to defeasance only if the preferential right is asserted within the time prescribed by law, has been uniformly recognized by the Department. It follows, therefore, that, without reference to the question of Bowman's [the first settler] abandonment of his settlement thereon, Armann's [the second settler] claim is superior to Hall's [the third settler], since her settlement was junior to his, and her purchase did not carry a right except in the improvements. Armann was properly advised by the local officers that only continued occupancy would protect a settlement claim. Previous departmental holdings extending credit for residence to those actual residents upon public land, under an entry, in instances of subsequent absence due to performance of official duty, have never been applied to a mere settlement not asserted through entry; consequently, when Boman left the land in 1907 his preferential right, secured by prior settlement, was at an end. This right could not be transferred; neither could it be urged through an attempted purchase from the original settler as against intervening rights secured through settlement by another." (Matter in brackets supplied.)

Counsel for plaintiff attempts to make much of the fact that Hacking went on the land knowing that Alvin had already laid claim to it. Under authority of the last-cited

case this fact, however, is immaterial. In that case Armann was advised by the local land office that Bowman's rights could not prevail unless he continued his residence thereon, and, knowing this, Armann went on the land being satisfied that he could show that Bowman did not comply with the residence requirements. In the case before us, Hacking went on the land knowing of Alvin's claim, but was satisfied he could show that Alvin had not met the requirements of the law with respect to residence. The trial court found that Alvin's residence did not comply with the law, and, as already indicated, that finding will not be disturbed.

Objection is made by plaintiff that the affirmative relief granted to defendant by the decree finds no support in the pleadings since the defendant's cross-complaint was dismissed. The record discloses that at the close of the evidence defendant's counsel made the following statement:

"If the Court please, we have interposed a counterclaim here asking for damages for being restrained from going on this particular section. There seems to be a different rule obtaining in different courts as to whether it is proper to hear evidence on that in the trial proper or whether the amount of damages should be left to a later suit on the undertaking in the event that the one party or the other is successful here. Now, at this time, it would be agreeable with us to have our counterclaim dismissed without prejudice, and that would practically end our case."

If this were all of the record on this subject, we could readily conclude, as is contended by defendant's counsel in his brief and argument, that all that was intended to be dismissed was the counterclaim for damages. The court, however, in its findings of fact made a finding as follows:

"6. At the trial of this cause upon motion of defendant, defendant's cross-complaint was dismissed without prejudice."

The findings prepared by counsel for defendant contain language in the proposed finding No. 6 which would limit or restrict the finding of dismissal to the demand for damages, but all such limiting language was stricken before

signing by the judge, leaving the finding as above quoted. No exception was taken to this, no cross-error assigned, nor cross-appeal taken. On the record we must take the fact as found by the court, which is that the cross-complaint has been dismissed.

Defendant contends that, notwithstanding this, affirmative relief in the decree finds support in the general allegations of the answer wherein it is alleged that defendant for several years last past was, and now is, entitled to the sole and exclusive possession and use of the land, ▇▇ and every part thereof, and was permissible under the prayer for general relief. Such allegations, although in general terms, allege ultimate facts and are sufficient to support the judgment. *Tate* v. *Rose*, 35 Utah 229, 99 P. 1003; *State* v. *Rolio*, 71 Utah 91, 262 P. 987. When, under the evidence and findings, plaintiff's claimed right to possession failed and defendant's right to possession is established, a decree and judgment settling the question of possession and affording relief as between the parties was entirely proper. *Fisher* v. *Davis*, 77 Utah 81, 291 P. 493.

The judgment is affirmed. Costs to respondent.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.